UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GILBERTO TRINIDAD, JEREMY FERNANDEZ and NICOLAS DE JESUS HERRERA SANCHEZ,

                Plaintiffs,

    -against-

62 REALTY, LLC, 311 REALTY, LLC, DEANNA JOY and JIM FRANTZ,

                Defendants.
-----------------------------------------------------------------X

Case No. 22-cv-101

**COMPLAINT**

Plaintiffs GILBERTO TRINIDAD ("Trinidad"), JEREMY FERNANDEZ ("Fernandez") and NICOLAS DE JESUS HERRERA SANCHEZ ("Herrera Sanchez") (collectively, "Plaintiffs"), by their attorneys, RAPAPORT LAW FIRM, PLLC, as and for their Complaint, allege as follows:

## PRELIMINARY STATEMENT

1. This action is brought pursuant to the New York Labor Law ("NYLL") Article 19 § 663, 12 New York Codes, Rules and Regulations ("NYCRR"), Part 141 and NYLL Article 6 § 190 *et seq.*, the Fair Labor Standards Act ("FLSA"), and 29 U.S.C. § 207, to recover unpaid overtime wages, minimum wages, and other wages owed to Plaintiffs, who worked at apartment buildings owned, controlled and/or operated by Defendants in the Bronx County, New York.

2. At all relevant times, Defendants 62 Realty, LLC ("62 Realty"), 311 Realty, LLC ("311 Realty"), Deanna Joy ("Joy") and Jim Frantz ("Frantz") (collectively, "Defendants") operated as a unified, family-operated, and centrally-controlled real estate enterprise that owns and controls apartment buildings in Bronx County, New York.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction of this action pursuant to the provisions of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 et seq., including under 29 U.S.C. §§ 207, 216, and 217. This Court also has jurisdiction in light of the existence of a controversy arising under the laws of the United States (28 U.S.C. §1331) and supplemental jurisdiction to consider claims arising under New York state law, pursuant to 28 U.S.C. §1367.

4. Venue as to Defendants is proper in this judicial district, pursuant to 28 U.S.C. §1391. Defendants transact business and have agents in the Southern District and are otherwise within this Court's jurisdiction for purposes of service of process. Defendants operate facilities and employed Plaintiffs in this judicial district, namely in Bronx County.

5. This Court has personal jurisdiction over the Defendants, pursuant to New York Civil Practice Law and Rules § 301, in that, *inter alia*, Defendants reside and/or transact business within this State, employed Plaintiffs within the State of New York and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the law of the State of New York, and accordingly may be served with process pursuant to Rule 4(h)(1), Fed.R.Civ.P.

## THE PARTIES

**Plaintiffs:**

    **Trinidad.**

6. Trinidad is an adult, natural person who resides in Bronx County, New York.

7. Trinidad has been an employee of Defendants since approximately February 2014, continuing to the present.

8. Initially, Trinidad was assigned by Defendants to work as superintendent of Defendants' apartment building located at 55 East 208th Street, Bronx, New York ("55 East 208th").

9. In or about December 2015, Defendants transferred Trinidad to Defendants' buildings located at 3060, 3062 and 3070 Decatur Avenue, Bronx, New York (the "Decatur Ave. Buildings"), where Trinidad continues to work as superintendent.

10. In addition to performing superintendent duties, Trinidad performs substantial construction and renovation projects for Defendants.

11. On or about December 6, 2021, Trinidad was given written notice that his employment would be terminated effective January 6, 2022.

**Fernandez.**

12. Fernandez is an adult, natural person who resides in Bronx County, New York.

13. Fernandez has been employed by Defendants since about February 13, 2017, continuing to the present.

14. At all relevant times, Fernandez has worked as the superintendent of 55 East 208th.

15. In addition to performing superintendent duties, Fernandez performs substantial construction and renovation projects for Defendants.

16. On or about December 6, 2021, Fernandez was given written notice that his employment would be terminated effective January 6, 2022.

**Herrera Sanchez.**

17. Herrera Sanchez is an adult, natural person who resides in Bronx County, New York.

18. Herrera Sanchez was employed by Defendants as a porter at the Decatur Ave. Buildings, beginning in or about August 2016 until on or about August 30, 2021, when Defendants terminated him without any notice, and demanded that he immediately vacate his living space in the basement of 3060 Decatur Avenue.

19. At all times relevant to his claims, Herrera Sanchez had the status of Defendants' employee, and he was entitled to the protections and rights afforded by the FLSA and NYLL.

**Defendants:**

20. Defendants operate as a unified enterprise for a common business purpose, to wit: directly and/or indirectly owning, managing and controlling apartment buildings in Bronx County, New York, which are titled in the name of title-holding companies, which include the corporate defendants herein ("Defendant Corporations").

21. Defendants operate the foregoing enterprise from a residential address in Monsey, New York, which, upon information and belief, is the residence of one or more of the individual defendants.

**Individual Defendants.**

*Joy.*

22. Upon information and belief, at all relevant times, continuing to the present, Joy is an adult, natural person who resides in the Hamlet of Monsey, County of Rockland and State of New York.

23. Joy is an individual engaging in (or who was engaged) in business in this judicial district during the relevant time period. Joy is sued in her capacity as owner, officer and/or agent of Defendant Corporations.

24. Joy possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations.

25. Upon information and belief, Joy is the Managing Member of 62 Realty.

26. Upon information and belief, Joy is the Managing Member of 311 Realty.

27. Upon information and belief, Joy determines the wages and compensation of the employees of Defendants, including Plaintiffs, maintains payroll records, has the authority to hire and fire employees, and she has exercised this authority by determining Plaintiffs' respective rates of pay.

28. By way of example, Joy exercised her authority to fire employees by terminating the employment of all of the Plaintiffs herein.

**Frantz.**

29. Upon information and belief, Frantz is an adult, natural person who resides in Rockland County, New York.

30. Frantz is an individual engaging in (or who was engaged) in business in this judicial district during the relevant time period.

31. According to records of the New York City Department of Housing Preservation and Development, Frantz is the registered Managing Agent of 55 East 208th and the Decatur Ave. Buildings.

32. Upon information and belief, Frantz, together with Joy, manages the buildings where Plaintiffs work.

33. Upon information and belief, Frantz, together with Joy, determines the wages and compensation of the employees of Defendants, including Plaintiffs, maintains payroll records, and has the authority to hire and fire employees.

**Corporate Defendants**.

34. Upon information and belief, 62 Realty is a New York corporation doing business in Bronx County, New York, and it holds title to the Decatur Ave. Buildings.

35. Upon information and belief, 311 Realty is a New York corporation doing business in Bronx County, New York, and it holds title to 55 East 208th.

36. Defendants are an integrated enterprise, with common management, control, personnel policies, ownership, and inextricably intertwined operations and functioning, and they subject their employees to the same policies and procedures, in particular policies and procedures relating to the violations alleged in this Complaint.

## FACTUAL ALLEGATIONS

37. As described herein, Defendants have, for years, knowingly engaged in unlawful business practices by: (a) requiring all of the Plaintiffs to work numerous hours of overtime on a weekly basis without overtime compensation that Defendants were obligated to pay under the FLSA and NYLL; (b) paying Herrera Sanchez flat weekly sums that resulted in effective hourly rates that fell below federal and/or New York minimum wage rates; (c) illegally deducting sums from Trinidad and Fernandez' paychecks by, *inter alia*, failing to reimburse them for work-related tools of the trade; and (d) failing to provide wage notices and wage statements containing all of the information required by the NYLL.

38. Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

39. At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs within the meaning of the FLSA and all other statutes referred to in this Complaint.

40. At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs within the meaning of the NYLL, §§ 2 and 651.

41. Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.00.

42. Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay building maintenance employees by the same method, and share control over employees.

43. Each Defendant possessed, and continues to possess, substantial control over the policies and practices over Plaintiffs' working conditions.

44. Defendants jointly employed Plaintiffs and are Plaintiffs' employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

45. In the alternative, Defendants constitute a single employer of Plaintiffs.

46. Upon information and belief, Joy operates the Defendant Corporations as either alter egos of herself and/or fails to operate Defendant Corporations as legally separate entities apart from herself.

47. Upon information and belief, among other things, the assets and revenues of the Defendant Corporations are intermingled.

48. Upon information and belief, Defendant Joy operates 55 East 208th and the Decatur Ave. Buildings, and the Defendant Corporations, for her own benefit and the benefit of her family members, without adhering to corporate form.

**Factual Allegations Relating to Wage Claims:**

**Trinidad:**

49. Trinidad began working for Defendants in or about February 2014, and he continues to be employed by Defendants. However, on or about December 6, 2021, Joy gave Trinidad written notice that his employment would be terminated effective January 6, 2022.

50. At all relevant times, Trinidad was not paid premium overtime compensation (one and one-half (1.5) times his regular rate of pay) for the substantial amount of overtime

hours (i.e., above the first forty (40) hours of work that he worked each work week. His weekly pay covered only the first forty (40) hours of work.

51. As superintendent of 55 East 208th, and thereafter at the Decatur Ave. Buildings, Trinidad's duties involved virtually all aspects of building maintenance, including apartment turnovers, painting, light electrical work, addressing heating and boiler-related issues, remedying leaks and being on-call for tenant emergencies twenty-four hours per day.

52. Defendants did not provide Trinidad with any method to report the hours that he worked.

53. Trinidad's regular work schedule each week involved a minimum of 46.5 hours, as follows: weekdays (Monday through Friday) from approximately 8:30 a.m. to 5:00 p.m.; and on Saturdays from approximately 10:00 a.m. to approximately 2:00 p.m. However, he was not paid premium overtime compensation (1.5 times his regular rate of pay) for hours he worked above the first forty hours of work per week.

54. In actuality, Trinidad was required to be on-call and handle tenant requests at all hours, and therefore, he worked far more than 46.5 hours per week.

55. Solely by way of example, during the late night hours of December 31, 2017 to January 1, 2018, a pipe burst in Apartment 3A of 3070 Decatur Avenue. To address this emergent issue, Trinidad worked overnight for approximately six (6) hours to unclog the drainpipe in the apartment's bathroom and change the hose connected to the faucet. This work was performed over and above Trinidad's regular work schedule, and he received no additional compensation for this. The foregoing is but one example of circumstances when Trinidad, who was always on call, addressed emergent issues and tenants' complaints at all hours and on weekends.

56. Because tenants were given Trinidad's cell phone number, they contacted him for assistance during evening hours and on weekends to address emergencies involving

tenants. For example, in or about February 2021, during evening hours, multiple tenants of 3060 Decatur Avenue complained to Trinidad about a leak. Trinidad entered the apartment where the leak had arisen, and found the tenant was deceased. He spent the evening with emergency responders at the scene.

57. On other occasions too numerous to mention, tenants would request Trinidad's assistance at night when they were locked out of their apartments.

**Fernandez:**

58. Fernandez began working for Defendants in or about February 13, 2017.

59. At all relevant times, Fernandez was superintendent of 55 East 208th.

60. On or about December 6, 2021, Joy gave Fernandez written notice that his employment would be terminated effective January 6, 2022.

61. Fernandez was paid wages only for the first forty (40) hours that he worked per week, and he was not paid premium overtime pay (at 1.5 times his regular rate of pay) for the substantial amount of overtime hours (hours worked above the first forty) that he worked each week.

62. As superintendent of 55 East 208th, Fernandez' duties involved virtually all aspects of maintenance, including removal of trash and recyclables, apartment renovations and turnovers, painting, light electrical work, addressing leaks, shoveling snow, cleaning surface areas, and being on-call for tenant emergencies twenty-four hours per day.

63. Fernandez' weekly work schedule involved a minimum of 56 hours of work, as follows: weekdays (Monday through Friday) from approximately 7:00 a.m. to 5:00 p.m.; Saturdays from 7:00 a.m. to 11:00 a.m.; and typically two hours on Sundays.

64. The foregoing is a conservative estimates of Fernandez' hours of work, particularly because Fernandez was on-call, and he was regularly called upon to perform work after hours.

65. Solely by way of example, on or about Sunday, December 26, 2021, Fernandez was informed that a tenant's apartment lacked heat and hot water. Fernandez spent the morning assessing the issue and arranging for a specialist to come to the premises.

66. By way of further example, for an extended period of time in or about March 2018, Fernandez had to manually turn on the boiler approximately once per hour during overnight hours due to boiler-related issues.

**Fire Damage Remediation Work Performed by Trinidad and Fernandez:**

67. In 2018, Trinidad and Fernandez were asked by Defendants to perform an extensive project – over and above their typical duties – that entailed the rehabilitation of fire-damaged apartments (the "Fire Damage Remediation Project"). The Fire Damage Remediation Project involved gut reconstruction of portions of bathrooms and kitchens in fire-damaged apartments. Defendants represented to Trinidad and Fernandez that the Fire Damage Remediation Project was separate from their regular duties, and therefore insistent on paying them as independent contractors.

68. In fact, Defendants' foregoing method of compensating Trinidad and Fernandez for the Fire Damage Remediation Project had the intention and effect of: (a) depriving Trinidad and Fernandez of premium overtime compensation for their extensive overtime hours entailed by this work; and (b) unlawfully causing extensive sums to be deducted from Trinidad and Fernandez' pay they had to pay, out of pocket, the cost of two workers who assisted them with the Fire Damage Remediation Project.

69. Throughout the Fire Damage Remediation Project, Trinidad and Fernandez also performed their superintendent duties.

**Herrera Sanchez:**

70. Herrera Sanchez' job duties as porter included, *inter alia*, handling garbage and recycling, cleaning interior and exterior common areas, shoveling snow, cleaning up after leaks and other repair/maintenance issues, and generally assisting the superintendent.

71. Herrera Sanchez' typical work schedule involved a minimum of 60 hours per week, as follows: (a) Monday through Friday, from 7:00 a.m. to 5:00 p.m.; and extensive hours on weekends, particularly each Sunday, when he had to handle garbage and recycling.

72. Beginning with the commencement of his employment in or about 2016, until in or about early 2018, Defendants paid Herrera Sanchez a flat salary of $250.00, which was below both federal and New York State minimum wage rates.

73. Commencing in or about early 2018, Defendants paid Herrera the sum of $300.00 per week, which was significantly lower than the applicable New York minimum wage.

74. Defendants did not provide Herrera Sanchez with any method to report the hours that he worked.

75. Herrera Sanchez' wages did not include any pay for overtime hours (hours worked above the first forty hours of work per week), even though his regular work schedule involved at least 60 hours of overtime (i.e., hours worked above the first forty per week).

**AS AND FOR A FIRST CAUSE OF ACTION**
**Violation of the New York Minimum Wage Act**
**(On Behalf of Herrera Sanchez)**

76. Herrera Sanchez incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

77. The minimum wage provisions of the NYLL, including Article 19, and its supporting regulations, apply to Defendants and Herrera Sanchez.

78. During every year of Herrera Sanchez' employment, Defendants, in violation of the NYLL, willfully paid Herrera Sanchez less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

79. By way of example, Herrera Sanchez' effective hourly rate of pay in 2017 was $6.25 ($250.00 ÷ 40).

80. Herrera Sanchez was damaged in amounts to be determined at trial.

81. Due to Defendants' willful violations of the NYLL, Herrera Sanchez is entitled to recover from Defendants his unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**AS AND FOR A SECOND CAUSE OF ACTION**
**FLSA Overtime Wage Violations, 29 U.S.C. §§ 201 *et seq.***
**(On Behalf of All Plaintiffs)**

82. Plaintiffs incorporate in this cause of action each and every allegation of the preceding paragraphs with the same force and effect as though fully set forth herein.

83. At all relevant times hereto, the Defendants have been employers engaged in commerce, as defined under 29 U.S.C. § 203(b) and (d). Defendants employed Plaintiffs as a building maintenance workers, employment positions which engaged Plaintiffs in commerce, as defined under 29 U.S.C. §§ 203(b), (e), (g) and 29 U.S.C. § 207(a)(1).

84. At all times relevant hereto, Defendants have been an "enterprise engaged in commerce or in the production of goods for commerce," as defined under 29 U.S.C. § 203(s)(1).

85. In the performance of their duties for Defendants, Plaintiffs worked substantially more than forty (40) hours per week, yet did not receive overtime compensation for the work, labor and services they provided to Defendants, as required by the FLSA, 29 U.S.C. §§ 206 and 207. The precise number of unpaid overtime hours will be proven at trial.

86. Defendants' violations of the FLSA were willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

87. As a result of the foregoing, Plaintiffs seek judgment against Defendants for all unpaid wages, including overtime wages owed by Defendants to Plaintiffs for the three-year period preceding the filing of this case, together with an award of an additional equal amount as liquidated damages, and costs, interest, and reasonable attorneys' fees, as provided for under 29 U.S.C. § 216(b).

### AS AND FOR A THIRD CAUSE OF ACTION
### New York Labor Law – Overtime Wages
### (On Behalf of All Plaintiffs)

88. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

89. The overtime wage provisions of the NYLL, including Article 19, and its supporting regulations, apply to Defendants and Plaintiffs.

90. Defendants willfully failed to pay Plaintiffs for all of the hours that they worked in excess of 40 hours in a workweek.

91. Defendants willfully failed to pay Plaintiffs overtime at a rate of time and one-half their effective, regular hourly rate for hours worked in excess of 40 hours per workweek.

92. Defendants willfully failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiffs.

93. As a result of Defendants' knowing or intentional failure to pay Plaintiffs overtime wages for hours worked in excess of 40 hours per workweek, Plaintiffs are entitled to compensation for unpaid overtime, liquidated damages, attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### AS AND FOR A FOURTH CAUSE OF ACTION
### Illegal Deductions, New York Labor Law, Article 19 § 193
### 12 N.Y.C.R.R. § 2.10(a)
### (On Behalf of Trinidad and Fernandez)

94. Trinidad and Fernandez incorporate each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

95. In violation of the New York Labor Law, Article 19, § 193, Defendants unlawfully deducted wages from Trinidad and Fernandez by requiring Trinidad and Fernandez to spend their own money on work-related expenses, including tools of the trade to complete their work.

96. For example, Fernandez paid, out of pocket and without reimbursement, the cost of a grinder, nail gun, tile cutter and drill.

97. Trinidad and Fernandez were subject to further unlawful deductions from their wages because they had to pay, out of pocket, two workers who assisted with the Fire Damage Remediation Project.

98. As a result of the foregoing, Trinidad and Fernandez seek judgment against Defendants for reimbursement of unlawful deductions, as well as liquidated damages, and interest, and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper.

### AS AND FOR A FIFTH CAUSE OF ACTION
### NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements
### (On Behalf of All Plaintiffs)

99. Plaintiffs incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

100. The NYLL and Wage Theft Prevention Act ("WTPA") require employers to provide employees with an accurate wage statement each time they are paid.

101. Defendants willfully failed to provide Plaintiffs with wage statements at the end of every pay period that correctly identified the name of the employer; address of employer; rates of pay or basis thereof; regular hourly rate; whether paid by the hour, shift, day, week, salary, piece, commission, or other; number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; and such other information as required by NYLL § 195(3).

102. Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendants liquidated damages of $250.00 per work day that the violations occurred, or continue to occur, up to $5,000.00, together with costs, reasonable attorneys' fees, pre-judgment and post-judgment interest, and injunctive and declaratory relief, pursuant to the NYLL § 198(1-d).

## AS AND FOR A SIXTH CAUSE OF ACTION
### NYLL Wage Theft Prevention Act (WTPA) – Failure to Provide Wage Notices
### (On Behalf of All Plaintiffs)

103. Plaintiffs incorporate by reference in this cause of action the prior allegations of this Complaint as if fully alleged herein.

104. The NYLL and WTPA, as well as the NYLL's interpretative wage orders, require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

105. From its enactment on April 9, 2011 through January 5, 2016, the WTPA also required employers to provide an annual written notice of wages to be distributed on or before February 1 of each year of employment (amended in January 2015 to be distributed "upon hiring" and not annually) and to provide to employees, a written notice setting forth the employee's rates of pay and basis thereof; the name of the employer; physical address of the employer's business; names used by the employer; and other mandated disclosure.

106. In violation of NYLL § 191, Defendants failed to furnish Plaintiffs, at the time of hiring (and annually for those years prior to the January 2015 amendment) or whenever there was a change to their rate of pay, with wage notices required by NYLL § 191.

107. Due to Defendants' violation of NYLL § 195(1), Plaintiffs are entitled to recover from Defendants liquidated damages, together with reasonable attorneys' fees and costs of this action, pursuant to the NYLL § 198(1-b).

## RELIEF SOUGHT

**WHEREFORE,** Plaintiffs, GILBERTO TRINIDAD, JEREMY FERNANDEZ and NICOLAS DE JESUS HERRERA SANCHEZ, respectfully request that the Court grant the following relief:

1. Declaring, adjudging and decreeing that Defendants violated the minimum wage and overtime provisions of the NYLL as to Plaintiff Herrera Sanchez;

2. Declaring, adjudging and decreeing that Defendants violated the overtime provisions as to all of the Plaintiffs herein;

3. Awarding Plaintiffs damages and restitution for unpaid compensation, unpaid minimum wages, unpaid overtime compensation, including interest thereon, and statutory penalties in amounts to be proven at trial, as well as liquidated damages;

4. Awarding Plaintiffs damages and restitution for unlawful deductions in violating of the NYLL, including interest thereon, and statutory penalties in amounts to be proven at trial, as well as liquidated damages;

5. Awarding statutory damages for Defendants' failure to provide Plaintiffs with statements and information required by NYLL § 198(1-b) and (1-d) and NYLL § 195(3);

6. Awarding statutory damages for Defendants' violation of NYLL § 191 by failing to furnish Plaintiffs, at the time of hiring or whenever there was a change to their rates of pay, with wage notices required by NYLL § 191;

7. Declaring that Defendants' violations of the NYLL were willful;

8. For all other Orders, findings and determinations identified and sought in this Complaint;

9. For prejudgment and post judgment interest on the amount of any and all economic losses, at the prevailing legal rate;

10. For reasonable attorneys' fees and expenses of this action, pursuant to 29 U.S.C. § 216(b), New York Labor Law and as otherwise provided by law; and

11. Such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
January 05, 2022

**RAPAPORT LAW FIRM, PLLC**

By: /s/
_____
Marc A. Rapaport
Rapaport Law Firm, PLLC
80 Eighth Avenue, Suite 206
New York, New York 10011
Ph: (212) 382-1600
mrapaport@rapaportlaw.com

*Attorneys for Plaintiffs*